ELLIS, Judge.
This is a petitory action in which the plaintiff, Chauvin, seeks to be declared the owner of a certain tract of land in Ascension Parish, State of Louisiana, described as:
Lot Three (3) and the Northeast Quarter of the Northwest Quarter (NE¼ of NW¼) of Section 15, Township 10 South, Range 3 East, containing seventy-nine and eighty-three-one hundredths (79.83) acres, more or less, less and except the East Half (E½) of said Lot Three (3).
The defendant, LeBlanc, answered claiming title to Lot Three (3) and the South Half of the Northeast Quarter of the Northwest Quarter (S½ of NE¼ of NW¼) °f Section 15, T 10 S. R. 3 E, containing sixty (60) acres, and in addition, defendant claimed ten years acquisitive prescription. It is admitted by all the parties that defendant, LeBlanc, is in possession of the property in dispute.
The trial court rendered judgment decreeing plaintiff, Chauvin, to be the owner of and entitled to possession of the North Half of the Northeast Quarter of the Northwest Quarter (N½ of NE¼ of NW¼) of Section 15, T 10 S. R. 3 E, containing twenty (20) acres, more or less, and rejected the demands of the plaintiff in all other respects.
In order to properly dispose of the issues herein presented, it is necessary to set forth the material and pertinent transfers pleaded by plaintiff in support of his allegations, as well as those pleaded by defendant. It should be stated that the only land involved *184 herein is Lot Three (3) and the NE¼ of the NW¼ of Section 15, T 10 S, R 3 E, less and except the E½ of Lot 3, notwithstanding that the instruments of conveyance hereinafter referred to include the description of land or lands other than the aforesaid property.
On December 27, 1898, Madison Bolls patented from the United States of America, Lot 3 and the NE¼ of the NW(4 of Section 15, T 10 S, R 3 E, containing 79.83 acres. By mesne conveyances from the patentee, the property passed into the hands of one Nicholas A. Dawson on November 18, 1918. Up to this point there is no ambiguity in the description.
Nicholas A. Dawson mortgaged the property, together with 13 other tracts, to the Federal 'Land Bank of New Orleans, and on February 9, 1935, all of said tracts were sold at Sheriff’s Sale to the Bank. In this sale the property now in dispute was described under paragraph 6 substantially as it was described in the patent to Bolls and in the sale to Dawson. There was no exception of property immediately following the description of the property in dispute. However, at the end of the description of the various 14 tracts of land being conveyed, there is an exception of property set out as follows:
“From the above is excepted Lot number 35 and the east half of Lot Number 32, containing 60 acres, more or less.”
On February 1, 1936, the Federal Land Bank conveyed to Harry B. Nelson, Lot 3 and the NE¼ of the NW¼ of Section 15, T 10 S, R 3 E, containing 79.83 acres, less and except the E½ of Lot 3, being designated as Lot number 35 on a plat of survey of Linwood Plantation. On April 15, 1939, Harry B. Nelson conveyed to Dubose A. Vann et ah, Lot 3 and the NE¼ of the NW¼ of Section 15 T 10 S R 3 E, containing 79.83 acres, less and except the Ei/¿ of the said Lot 3, Lot 3 being designated as Lot 35 on a plat of survey of Linwood Plantation. This description is essentially the same as in the deed from the Federal Land Bank to Harry B. Nelson.
On October 7, 1948, Dubose A. Vann, Jr., et al., conveyed the property under the same description as acquired from Harry B. Nelson, to Dr. Jules B. Rateau.
On November 20, 1951, Dr. Jules B. Rateau conveyed to Vernell L. Abreo and Wilson P. LeBlanc (defendant herein) Lot 3 and the NE¼ of the NW¼ of Section 15, T 10 S, R 3 E, containing 79.83 acres, less and except Lot 35 and the E½ of Lot 32, containing 60 acres, more or less.
On November 20, 1951, Vernell L. Abreo and Wilson P. LeBlanc (defendant) conveyed to Robert J. Chauvin (plaintiff) Lot 3 and the NE¼ of the NW¼ of Section 15 T 10 S, R. 3 E, containing 79.83 acres, less and except the E1/2 of the said Lot 3, being designated as Lot 35 on a plat of survey of Linwood Plantation.
In the last conveyance we note that the description of the excepted property does not conform with the immediately preceding instrument, but is the same description as appears in the sale from the Federal Land Bank to Nelson, from Nelson to Vann, and from Vann to Rateau.
The transfers pleaded by defendant, Le-Blanc, in support of his alleged title commences with the Madison Bolls patent of December 27, 1898, and follow the same chain as that of plaintiff, until the Federal Land Bank acquired title by sheriff’s sale deed on February 28, 1935. The defendant claims that Lot 3 of the Northwest Quarter of Section 15, and the S1/2 of the NE¼ of the NW¼ of Section 15, T 10 S, R 3 E, containing 60 acres, is the property excepted in the Federal Land Bank’s Sheriff’s deed wherein the excepted property was referred to as Lot 35 and the E½ of Lot 32, containing 60 acres, more or less.
By deed dated December 2, 1940, the heirs of Nicholas A. Dawson conveyed to Michael D. Tinnin the 60 acres more or less, *185 and being more particularly described as being Lot 35 and the of Lot 32, which tract was expressly excluded and excepted in the Mortgage granted to the Federal Land Bank by the late Nicholas A. Dawson, and which tract was expressly reserved by the said Dawson.
On October 6, 1941 by Act of Correction of description from the Dawson heirs to Tinnin, the description containing in the prior sale from Dawson to Tinnin was corrected to read as Lot 3 of the NW¼ of Section 15, and the S1/2 of the NE¼ of the NW¼ of Section 15, T 10 S, R 3 E.
On November 29, 1946, Michael D. Tin-nin conveyed to defendant, Wilson P. Le-Blanc, Lot 3 of the NW¼ of Section 15, and the S1/2 of the NE¼ of the NW¼ of Section 15, T 10 S, R. 3 E, containing 60 acres more or less, being the property excluded under paragraph 14 of the property mortgaged to the Federal Land Bank.
In support of Chauvin’s contention that he is the owner of Lot 3 and the NE¼ of the NW¼ of Section 15, T 10 S, R 3 E, containing 79.83 acres, less and except the E½ of Lot 3, plaintiff introduced in evidence a certified copy of the official plat of the survey of the General Land Office wherein there is neither a Lot No. 35 nor a Lot No. 32. Plaintiff further contends that since there is neither a Lot 35 nor a Lot 32, evidently the description in the Federal Land Bank deed and the deed from Dr. Rateau to Abreo and LeBlanc and excepting Lot 35 and the Ejds of 'Lot 32, containing 60 acres, was referred to another map of said property belonging to Nicholas A. Dawson, and over the objections of defendants, successfully introduced in evidence a document styled “Map of Linwood Plantation, Ascension Parish.” This map was made by A. G. Mundinger, Civil Engineer and Surveyor, and therein it appears that it was compiled from a copy of a map on file with the Federal Land Bank in New Orleans, Louisiana. This map indicated that Lot 32 is Lot 3 of the map of the Surveyor General’s Office and that Lot 35 is Lot 4 of the map of the Surveyor General’s Office, and more particularly being the SW¼ of the NW¼ of Section 15, T 10 S, R 3 E.
It is on the basis of these documents that plaintiff claims the ownership of Lot 3 and the NE¼ of the NW¼ of Section 15, T 10 S, R 3 E, containing 79.83 acres, less and except the E½ of Lot 3, admitting in effect that defendant is the owner of the E¼ of Lot 3. The defendant admits in effect that the plaintiff is the owner of the N¼ of the NE¼ of the NW¼ of Section 15, T 10 S, R 3 E, but claims the ownership of all of Lot 3 and the S1/2 of the NE¼ of the NW¼ of Section 15, T 10, S, R 3 E, containing in all some 60 acres and alleged to be the identical 60 acres excluded from the Dawson mortgage to the Federal Land Bank.
The primary question to be resolved is which party has title to the property in dispute. Plaintiff Chauvin may not recover the property simply because defendant lacks title to it, since, in a petitory action the plaintiff out of possession must make out his title to the property claimed and must recover upon the strength of his own title and not upon the weakness of the defendant possessor’s title. (Albritton v. Childers, 225 La. 900, 74 So.2d 156; Thurmon v. Hogg, 225 La. 263, 72 So.2d 500; Parham v. Maxwell, 222 La. 149, 62 So.2d 255; Waterman v. Tidewater Associated Oil Co., 213 La. 588, 35 So.2d 225; Dugas v. Powell, 197 La. 409, 1 So.2d 677; Cook v. Martin, 188 La. 1063, 178 So. 881; Smith v. Chappell, 177 La. 311, 148 So. 242.) It is further a well-settled principle of law that a deed will not be declared void for uncertainty in description if it is possible by any reasonable rules of construction to ascertain from the description, aided by extrinsic evidence, what property is intended to be conveyed. It is sufficient if the description in the deed or conveyance furnishes a means of identification of the land or by which the property can be located. The Courts are hesitant to strike *186 down a deed for uncertainty of description of the land conveyed, and a liberal rule of construction will be applied to uphold the conveyance. (Tircuit v. Burton-Swartz Cypress Co., 162 La. 319, 110 So. 489; Snelling v. Adair, 196 La. 624, 199 So. 782.) Likewise, parole evidence is permissible when there is no true intent to sell or convey a certain piece of property not only where the intent has not been mutually communicated or implied, but also where it has been produced by error, fraud, etc., for in such cases there is no consent. Blackwell v. Nagy, La.App., 122 So.2d 903, at 908.
From an examination of the entire record we feel that the plaintiff has failed in discharging the burden of proof required of him to make out title in a petitory action. We are in complete agreement with the learned trial judge who stated:
“The Court is unable to find on the basis of the transfers recited above that the plaintiff has met the burden of proof which the law imposes in a petitory action. The plaintiff admits that the description by which he acquired is ambiguous and partially incorrect. The Court is of the opinion that the various descriptions sometimes by governmental lot numbers and sometimes by the lot numbers on a plat of Linwood Plantation not otherwise identified, and the apparent incorrect identification of the government lot numbers and the Linwood lot numbers, are hopelessly confused on' the basis of the deeds alone, and that reference must be had to the intention of the parties. In this connection the recitals in the Act of Correction entered into between the Dawson heirs and Michael Tinnin * * * clearly indicate the true intention of the parties concerned, which was to exclude from the mortgage to the Federal Land Bank Lot 3 arid the S'Yz of the NEj4 of the NWJ4 of 15 — 10—3. Every sale subsequent to the mortgage to the Federal Land Bank contains a clause excepting a certain area, and while the descriptions are not always clear, it is evident that each sale was intended to exclude the area which Dawson had reserved in the mortgage to the Bank. This was of course necessary because the Bank and its vendee could not convey that which they did not own.
“The Act of Correction * * * referred to above were placed of record more than ten years prior to the plaintiff’s purchase. In addition to this record evidence, the intention of the parties is demonstrated by the fact of physical possession. LeBlanc testified without contradiction that when he purchased from Tinnin in 1946 he went into possession of the property now claimed by the plaintiff, that at that time the property was already under fence, presumably having been fenced by Tinnin, and that the then owners of Linwood Plantation never questioned his possession or asserted any claim to the property.
“The plaintiff does not seriously contest this evidence as to the intention of the parties, but instead bases his case on the contention that the deeds refer to Lot 35 and the EJ/£ of Lot 32 as shown on the plat of Linwood Plantation prepared by Mr-Mundinger. This theory is questionable in that (1) none of the descriptions ever refer specifically to the Mundinger plat, and (2) in the majority of the descriptions governmental Lot 3 is identified with Lot 35 of Linwood while on the Mundinger plat government Lot 3 is identified with Lot 32 of Linwood. Furthermore, the plaintiff’s theory would compel the court to hold that Dawson excluded from his mortgage to the Bank a tract of land which he did not own and with which he never had any connection. This is beyond the bounds of .reason. The plaintiff’s theory is a possible interpretation of a series of ambiguous descriptions, but it cannot prevail in the light of positive and convincing evidence of a contrary intention on the part of the respective parties involved. The evidence clearly preponderates in favor of the conclusion that the sixty acres excluded by Dawson in the mortgage to the Federal Land Bank, and intended to be excluded in all subsequent sales emanating from the Bank, are *187 the identical- sixty acres which the defendant now possesses and which he acquired by mesne conveyances from the heirs of Dawson.
“The only remaining- question is whether or not in the sale from Abreo and Le-Blanc to Chauvin the defendant intended to sell and the plaintiff to buy only the property acquired by them from Dr. Rateau, or whether the sale was also intended to convey title to the tract acquired by Le-Blanc from Tinnin. As noted earlier, Abreo and LeBlanc conveyed to Chauvin the very same day that they acquired from Dr. Rateau. Apparently in conformity with a purchase agreement, they - took title from Dr. Rateau with the sole purpose of immediately transferring it to Chauvin, who could obtain the necessary financing which Abreo and LeBlanc could not. The description contained in the sale to Chauvin is the same by which Dr. Rateau acquired from Vann, and at the conclusion of all of the descriptions the acquisition is given as ‘Being the same property acquired by the vendors from Dr. J. B. Rateau.’ No reference is made to the property acquired by LeBlanc from Tinnin.
“Furthermore, the plaintiff testified on cross examination as follows:
“ ‘Q. Well the question is this, Mr. Chauvin, on the date the sale was passed, did you understand that notwithstanding or regardless of how this was described, you were buying exactly the same property Dr. Rateau sold to Mr. LeBlanc and Mr. Abreo?
“ ‘A. That is what they were supposed to sold to me, the exact property they bought from Dr. Rateau.’ ”
“The evidence clearly preponderates in favor of the conclusion that it was the intention of Abreo and LeBlanc to sell, and of Chauvin to buy, everything that Abreo and LeBlanc had acquired the same day from Dr. Rateau, and that there was no intention on the part of LeBlanc to sell or of Chauvin to purchase any other property owned by LeBlanc.
“In summary, the Court concludes that it was the intention of Dawson to exclude from the mortgage to the Federal Land Bank Lot 3 and the S½ of the NE¼ of the NW¼ of 15-10-3, containing sixty acres; that consequently this sixty acres was excluded from the sheriff’s sale to the Federal Land Bank, and that the plaintiff, holding under a title emanating from the Federal Land Bank has no claim to this sixty acres. On the other hand, the of the NE¼ of the NW¼ of 15-10-3 was not so excluded and consequently passed into the hands of the Federal Land Bank and from it by mesne conveyances to the plain * * *." [1]
*188 Since it is our opinion that the trial judge is manifestly correct in applying the law to the facts, it is unnecessary to consider the various other contentions and numerous assignments of errors made by counsel for appellant.
In a petitory action, plaintiff must recover on the strength of his own title and not the weakness of the defendant’s title. In every chain of plaintiff’s title there is excepted property, and, although it is not always clear as to what property is excepted, it is clear that property was excepted.
Long before plaintiff acquired title to the property owned by him, instruments were of record precisely setting out what property was excepted. The corrective instrument emanated from a common ancestor in title of both plaintiff and defendant (Dawsons), were executed at an unsus-picious time, and plaintiff could have easily determined the excepted property by examining the public records prior to his purchase.
Since we' have decided that plaintiff has failed to prove his title to the property in dispute, it is unnecessary to consider defendant’s plea of prescription.
For the above reasons, the judgment appealed from is affirmed.
Affirmed.